UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARTIN LUTHER BASKERVILLE, JR., | Civil Action No. 13-1750 (CCC) |
| Plaintiff, | |
| v. | OPINION |
| LT. JAMES STAPLETON, et al., | |
| Defendants. | |

**CECCHI, District Judge:**

Before the Court are Defendants' motions to dismiss Plaintiff's second amended complaint (ECF No. 29) pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 52-54. Plaintiff filed a response to the motions (ECF No. 57), to which Defendants replied (ECF Nos. 59-61). For the following reasons, the motions to dismiss are granted and Plaintiff's second amended complaint shall be dismissed without prejudice in its entirety.

## I. BACKGROUND

The following facts are drawn from Plaintiff's second amended complaint and are presumed to be true for the purposes of this opinion. Following a 1988 guilty plea to simple assault, Plaintiff, Martin Luther Baskerville, Jr., was arrested on an apparent violation of probation in February 1989. ECF No. 29 at 6. Plaintiff was thereafter held in the Bergen County Jail. Id. at 6-7. According to jail records, this period of incarceration continued until August 15, 1989.[1] Id.

---

[1] As noted in the opinion in Mr. Baskerville's habeus corpus case captioned *Baskerville v. Robinson*, 18-cv-9873, Mr. Baskerville's assertion that he was in jail from February 1989 through August 1989 was previously contradicted by Mr. Baskerville himself. *See Baskerville v. Robinson*, 18-cv-9873, ECF No. 24 at 2 n.1 ("Petitioner himself stated at his 1993 sentencing in

1

at 4-5. Later in 1989, Plaintiff was arrested by authorities in New York for a murder which occurred on April 4, 1989. Id. at 10-11. Plaintiff was thereafter convicted of second degree murder, first degree robbery, and second degree robbery arising out of the April 1989 incident. Id. at 7. On November 21, 1990, Plaintiff was sentenced to sixteen years to life on the murder charge with concurrent seven to twenty-one and five to fifteen year sentences on the two robbery charges. Id. at 9. In 1993, Plaintiff was returned to New Jersey and tried on separate charges resulting in a sentence of twenty years to run consecutive to his New York sentences. Id. at 12. In 2015, following the receipt of jail records suggesting he was in jail between February and August 1989, Plaintiff filed a motion seeking to correct his sentence and was awarded jail credits towards his New Jersey sentence based on this period of apparent incarceration.[2] Id. at 5-9. In the intervening years, Plaintiff has challenged his New York conviction multiple times. He filed a habeas petition in the Southern District of New York in 1998 which was denied by both the district court and Second Circuit, as well as a motion to vacate his sentence in the state court in 2007 which was also denied. Id. at 9-10. Plaintiff also has a motion to vacate his murder conviction pending in New York based on a claim of actual innocence which has yet to be decided. Id. at 10.

---

New Jersey that he 'posted . . . bail . . . March 11th of '89, and . . . was re-arrested June 28th, '89.' ECF No. 13-5 at 4. Thus both Petitioner's own statement at his sentencing, multiple witnesses in Petitioner's New York trial, and a police officer's testimony regarding Petitioner's own statement that he was with a friend and not in jail on the date of the murder (*see* ECF No. 21-4 at 128, 232-33, 254, 306, 323-24, 435, 440), suggest that the state jail records may well be mistaken.").

[2] Although Plaintiff was awarded jail credits based on his apparent incarceration, the New Jersey courts refused to vacate Petitioner's New Jersey sentence, reduce its term, or otherwise change it from a consecutive to a concurrent sentence. *See State v. Baskerville*, 2017 WL 5478314, at *1 (N.J. App. Div. Oct. 18, 2017) (the New Jersey Appellate Division "previously determined that [Plaintiff's] application for a concurrent sentence was without sufficient merit to warrant discussion" and rejected any new concurrent sentence claim as "New Jersey has no jurisdiction to review a New York conviction, nor [has Plaintiff identified] legal authority for modifying a sentence imposed more than twenty years ago 'in the interest of justice' due to a purportedly wrongful conviction in another jurisdiction").

According to Plaintiff's complaint, both his conviction in New York and the lengthy sentence he received thereafter in New Jersey were the result of the Bergen County Jail failing to properly keep, certify, and provide him with jail records showing he was in jail at the time of the April 1989 murder. Id. at 27-32. Plaintiff contends that he had a constitutional right to the keeping, certification, and provision of the records, and that the failure to keep and turn over these records amounted to a stand-alone constitutional violation and a violation of the state's duties under *Brady v. Maryland*, 373 U.S. 83 (1963). Id. As a result of these record retention and provision failures, Plaintiff contends he was damaged insomuch as he was "found guilty of an unwarranted homicide charge in New York and incarcerated years longer than necessary in New Jersey, instead of being sentenced to a concurrent term." Id. at 28-31.

## II. DISCUSSION

### A. Legal Standard

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [Plaintiff]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, the Plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

3

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." *Id.* "Determining whether the allegations in a complaint are plausible is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. While *pro se* pleadings are liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F. 3d 239, 245 (3d Cir. 2013) (citation omitted) (emphasis added).

## B. Analysis

In his operative amended complaint, Plaintiff raises the following claims under 42 U.S.C. § 1983 ("§ 1983"): a claim that his rights were violated when Defendants failed to properly keep and retain arrest records, a claim that his rights were violated when Defendants did not provide him with certified records of his incarceration during his New York prosecution to support his claim of innocence, a Fourth Amendment claim which appear to arise from Plaintiff's belief that he would not have been imprisoned absent the lack of jail records, a municipal liability claim attributing these § 1983 claims to Bergen County and related entities,[3] and a *Brady* claim based on the "failure" to turn over his arrest records during the New York prosecution. Plaintiff also raises state law tort claims for negligent keeping of records, negligent training of officers, and negligent infliction of emotional distress. Defendants present several arguments why these claims should be dismissed.

---

[3] Plaintiff pleads this claim twice – once titled "municipal liability" and once as a "*Monell* claim." ECF No. 29 at 29-30, 32.

4

In their first argument, Defendants assert that Plaintiff's non-*Brady*[4] § 1983 claims are not actionable as Plaintiff asserts only that the state failed to provide him with records to which Plaintiff had no federal constitutional right of access. "To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000); *see also Woodyard v. Cty. of Essex*, 514 F. App'x 177, 180 (3d Cir. 2013) (§ 1983 provides "private citizens with a means to redress violations of federal law committed by state [actors]"). "The first step in evaluating a [§] 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini*, 212 F.3d at 806 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n. 5 (1998)).

In his non-*Brady* claims, Plaintiff appears to be asserting that he had a constitutional right to have the County or its jail accurately retain, report, and provide him his jail records in an appropriate form. Plaintiff has failed to identify any cases that support this proposition or otherwise recognize a general constitutional right to receive jail records or other government documents, and the Court is unaware of any such case. Indeed, some federal courts have declined to find a constitutional right to the production of government documents. *See, e.g., McGehee v.*

---

[4] Although the Court need not decide the issue at this time because Plaintiff's claims are either *Heck* or time-barred as discussed below, the Court notes that Defendants have also raised a serious issue with regards to Plaintiff's *Brady* violation claim. While *Brady* requires that the state prosecuting a criminal defendant turn over all material exculpatory evidence in its possession (and the failure to do so may be grounds to overturn a criminal conviction), Plaintiff asserts in his complaint that the records in question were *not* in the possession of the prosecuting authority in his 1989 criminal case, but instead were in the hands of a county department in a different state at that time and were thus subject to an entirely different sovereign state's authority. Plaintiff has failed to provide any authority supporting an inter-state *Brady* claim in a case involving state crimes, and the Court thus doubts the viability of such a claim.

*Casey*, 718 F.2d 1137, 1147 (D.C. Cir. 1983) (parties seeking release of government information must rely on statutory rights as there is no constitutional right to access government documents); *Lewis v. Bayh*, 577 F. Supp. 2d 47, 57 (D.D.C. 2008) ("[T]here is no constitutionally protected right to government documents[.]"). Plaintiff's assertion that, in 1989, he had a constitutional right to the retention and production of his jail records absent a subpoena or other court order requiring their production therefore appears suspect. However, because Plaintiff's claims are barred for the reasons discussed below, the Court need not make a final determination that no such right exists to decide the present motions, and will not do so.

Defendants argue that even assuming Plaintiff's § 1983 claims, including his *Brady* claim, are cognizable, such claims are barred by the doctrine announced in *Heck v. Humphries*, 512 U.S. 477, 486-87 (1994). The Court agrees. Since the Supreme Court's decision in *Preiser v. Rodriguez*, 411 U.S. 475 (1973), it has been well established that a prisoner may not use a civil rights complaint as a means to collaterally attack or otherwise challenge the fact or duration of his criminal conviction or confinement. *See, e.g., Wilkinson v. Dotson*, 544 U.S. 74, 79 (2005) (A federal civil rights action "will not lie when a state prisoner challenges the fact or duration of his confinement" and a civil rights action cannot be used by a prisoner to seek either his "immediate release" or a "shortening" of his term of confinement.). In *Heck*, the Supreme Court extended this doctrine to bar not only direct challenges to confinement, but also those cases seeking monetary damages where the success of the underlying claim would necessarily impugn the validity of the plaintiff's prior conviction or sentence. *Wilkinson*, 544 U.S. at 80-82; *Heck*, 512 U.S. at 486-87. As such, the Supreme Court has clearly established that any suit which seeks damages arising from an allegedly improper conviction or sentence is barred and does not accrue unless and until the underlying conviction or sentence is overturned through a habeas corpus petition or similar state

court mechanism. *Wilkinson*, 544 U.S. at 81-82. Thus, a prisoner's civil rights action "is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of [his] confinement or its duration." *Id.*

Although Plaintiff asserts in his opposition brief that he does not seek to "collaterally attack" his New York or New Jersey convictions through his § 1983 claims, Plaintiff's complaint repeatedly states that the damages he claims to have suffered as a result of the alleged violations include his being found guilty in New York and his receiving a consecutive sentence in New Jersey. Plaintiff thus seeks to recover damages based on his convictions and sentences by alleging that he would not have been convicted had he received the documents in question. Plaintiff's success on his claims for damages directly requires that he prove his conviction could not have occurred had he been provided the records he asserts he was denied. In essence, Plaintiff's claim that his denial of access to these materials was an illegal seizure in violation of the Fourth Amendment amounts to an assertion by Plaintiff that being denied the records directly led to his being damaged in the form of an improper sentence. As Plaintiff seeks to recover damages based on his incarceration, and as Plaintiff's success on his claims would require him to prove that he would not have been convicted absent the alleged constitutional violations, his claims could not succeed without impugning the outcome of his criminal cases. Plaintiff's § 1983 claims are therefore barred by the *Heck* doctrine and are not viable unless and until Plaintiff has had his New York conviction and New Jersey consecutive sentenced overturned. *See Wilkinson*, 544 U.S. at 80-82; *Heck*, 512 U.S. at 486-87.

Finally, the Court notes that if Plaintiff's claims were not *Heck* barred and thus were not subject to the *Heck* delayed accrual rule, his claims would be barred by the statute of limitations. Actions brought pursuant to § 1983 in New Jersey are subject to New Jersey's two-year personal injury statute of limitations. *See Patyrak v. Apgar*, 511 F. App'x 193, 195 (3d Cir. 2013). "Under federal law, a cause of action accrues, and the statute of limitations begins to run when the plaintiff knew or should have known of the injury upon which its action is based." *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009). "As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Id.* Accrual is determined objectively – if a reasonable person in the plaintiff's position should have known of his injury, even if he does not yet understand the "full extent of injury," the claim accrues and the statute of limitations begins to run. *Id.* Here, Plaintiff asserts that he knew in November 1989 that he had been in jail at the time of the 1989 crime and raised this issue to his trial attorney. ECF No. 29 at 11. Plaintiff further alleges that counsel told him he had inquired of Bergen County regarding this issue, and was told that the county "had never heard" of Plaintiff. *Id.* at 12. Thus, Plaintiff was aware of his injury – his being denied records which would allegedly prove he was incarcerated at the time of the New York crime – prior to his being convicted on the New York offense in 1990. As Plaintiff was aware of the injury he suffered at the time of his New York conviction, and a reasonable person would have been aware of his injury by the time of his conviction, Plaintiff's claims had accrued by that time. *Kach*, 589 F.3d at 634. Plaintiff's two-year statute of limitations, absent some basis for tolling, would therefore have run in the early 1990's to the extent his claims are not barred by *Heck*.

Plaintiff asserts that, to the extent his claims are not barred, he should receive tolling pursuant to New Jersey's discovery rule. Although § 1983 claims are federal claims, the "general

8

rule is that state tolling principles . . . govern § 1983 claims" so long as state tolling principles do not "contradict federal law or policy." *Kach*, 589 F.3d at 639. New Jersey's discovery rule "provides that 'in an appropriate case a cause of action will be held not to accrue until the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered, that he may have a basis for an actionable claim." *Freeman v. State*, 788 A.2d 867, 878 (N.J. Super. Ct. App. Div. 2002) (quoting *Lopez v. Swyer*, 300 A.2d 563 (N.J. 1973)). A plaintiff invoking the rule must assert facts which would show that "they could not, through reasonable diligence and intelligence, have discovered a basis for their claim within the applicable limitations period." *Id.* A claimant's lack of awareness of the appropriate defendant does not warrant application of the discovery rule so long as the plaintiff knew of the *injury* that he suffered. *Id.* at 879. By Plaintiff's own admission, he was aware of the harm – that he had allegedly been incarcerated in April 1989 when the murder he was charged with took place, and was being denied records proving that fact – by the time of his 1990 conviction in New York, and was thus aware of his injury at that time. New Jersey's discovery rule is thus of no benefit to Plaintiff.

The fact that Plaintiff obtained additional evidence in support of his claim prior to his 2015 motion for jail credits does not alter the above analysis. The issue remains when Plaintiff knew of his *injury*, which by his own allegations occurred prior to his New York conviction. Thus, under either the federal accrual rule or the New Jersey discovery rule – the only basis for tolling Plaintiff presents – Plaintiff's claim, absent the *Heck* bar, would have accrued decades ago and his two year limitations period would have expired long before this matter was filed. Thus, were Plaintiff's § 1983 claims not *Heck* barred, they would be long since time-barred. As Plaintiff's claims *are Heck* barred for the reasons discussed above, however, his claims are barred unless and until he has at least his New York conviction overturned, and will not accrue as viable claims until that time.

All of Plaintiff's § 1983 claims must therefore be dismissed without prejudice until such time as Plaintiff's conviction is overturned. Because this Court will dismiss all of Plaintiff's claims over which this Court has original jurisdiction, this Court declines to extend supplemental jurisdiction over Plaintiff's remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000). Defendants' motions are thus granted, and Plaintiff's second amended complaint is dismissed without prejudice in its entirety.

### III. CONCLUSION

For the reasons stated above, this Court will grant Defendants' motions to dismiss (ECF Nos. 52-54), and Plaintiff's second amended complaint shall be dismissed without prejudice in its entirety. An appropriate order follows.

Date: September 25, 2019

Claire C. Cecchi, U.S.D.J.